[No. B236100. Second Dist., Div. Six. Jan. 29, 2013.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN ACHREM, Defendant and Appellant.

154

COUNSEL

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

YEGAN, J.—Here we hold that treatment at a parole outpatient clinic (POC), as "specified" by the State Department of Mental Health (DMH), satisfies the 90-day treatment criterion for an MDO (mentally disordered offender) commitment. (Pen. Code, §§ 2962, subd. (c), 2964, subd. (a); Cal. Code Regs., tit. 15, § 2570, subd. (f).)[1] Steven Achrem appeals from the judgment entered after the trial court determined he was an MDO.[2] Appellant

---

[1] All statutory references are to the Penal Code unless otherwise stated. California Code of Regulations, title 15, section 2570, subdivision (f) defines "Outpatient Treatment" as: "Mental health treatment provided by a local outpatient program specified by the State Department of Mental Health." The State Department of Mental Health is now known as the State Department of State Hospitals.

[2] In order to qualify an MDO for commitment, the trial court must find that the prisoner meets six statutory criteria. (§ 2962, subds. (a)–(d)(1).) The six criteria for an MDO commitment are the prisoner: (1) has a severe mental disorder; (2) used force or violence in

claims that he did not receive 90 days of treatment within a year of his parole or release date as required by section 2962, subdivision (c). We affirm and disapprove *People v. Del Valle* (2002) 100 Cal.App.4th 88 [121 Cal.Rptr.2d 889] (*Del Valle*) and *People v. Martin* (2005) 127 Cal.App.4th 970 [26 Cal.Rptr.3d 174] (*Martin*) where, in dicta, we stated that outpatient treatment cannot satisfy the 90-day treatment requirement of the MDO Act. (Pen. Code, § 2962, subd. (c).)

### Procedural History

Appellant suffers from schizophrenia, a severe mental disorder, and was convicted of manslaughter (§ 192, subd. (a)) and sentenced to 11 years state prison in 2000. After he was released on parole, he received treatment for 90 days (Apr. 13, 2010, to July 12, 2010) at a POC. Appellant violated parole and was returned to prison on February 8, 2011, where he received 73 days' treatment in an enhanced outpatient program (EOP). This treatment occurred all before his April 23, 2011 parole release date.

On July 15, 2011, the Board of Prison Terms (now known as Board of Parole Hearings (BPH)) certified appellant as an MDO for treatment at Atascadero State Hospital (ASH). Appellant filed a petition challenging the MDO certification and waived jury trial. (§ 2966, subd. (b).)

At trial, Joe Debruin, a forensic psychologist at ASH, opined that appellant met all the MDO criteria except criterion five: i.e., that appellant receive 90 days of treatment within a year of his April 23, 2011 parole or release date. Although appellant received EOP treatment (73 days) in prison, Dr. Debruin opined that appellant did not receive 90 days of outpatient treatment because a POC is "not affiliated" with DMH. Dr. Debruin explained it is "standard practice" in the ASH forensic department not to count POC treatment.

Citing *Del Valle* and *Martin*, appellant argued that POC treatment does not count because "[i]t's not inpatient treatment; never has been; never will be;

---

committing the underlying offense; (3) had a mental disorder that caused or was an aggravating factor in the commission of the underlying offense; (4) the disorder is not in remission or capable of being kept in remission without treatment; (5) the prisoner was treated for the disorder for at least 90 days in the year prior to his parole or release; and (6) the prisoner poses a serious danger of physical harm to others by reason of the disorder. (§ 2962, subd. (d)(1); *People v. Clark* (2000) 82 Cal.App.4th 1072, 1075–1076 [98 Cal.Rptr.2d 767].)

[it] is not treatment that is planned, approved and implemented through the C.D.C. [(California's Department of Corrections and Rehabilitation)] by the D.M.H. [(Department of Mental Health)] and that's the requirement if it's outpatient. . . . It doesn't qualify."

### 90-day Treatment Requirement

■ Section 2962, subdivision (c), part of the MDO act, requires the trial court find that "[t]he prisoner has been in treatment for the severe mental disorder for 90 days or more within the year prior to [his or her] parole or release." Literally construed, a "prisoner" is not a parolee and outpatient treatment (i.e., treatment out of custody) could never satisfy the 90-day treatment requirement. Like any other statute, the statutory language should not be given a literal meaning if it would result in absurd consequences that the Legislature did not intend. (*Younger v. Superior Court* (1978) 21 Cal.3d 102, 113 [145 Cal.Rptr. 674, 577 P.2d 1014].)

The confusion concerning what qualifies as "treatment" stems from the dicta in *Del Valle* where we stated that "a prisoner must receive 90 days of inpatient treatment before he can qualify as an MDO." (*Del Valle, supra,* 100 Cal.App.4th at p. 93.) There, the defendant received 85 days' treatment while in prison and five days' outpatient treatment *before his incarceration on the commitment offense.* (*Id.,* at pp. 90, 92.) We held that private outpatient treatment did not fulfill the 90-day requirement. The reason was straightforward: outpatient treatment does not count if it is in a private clinic before the defendant starts serving his/her prison sentence. The result in *Del Valle* was right but the dicta, i.e., "that a prisoner *must receive 90 days of inpatient treatment* before he can qualify as an MDO" was misleading in that it suggests that outpatient treatment cannot satisfy the 90-day statutory requirement. (*Id.,* at p. 93, italics added.)

■ We also disapprove *People v. Martin, supra,* 127 Cal.App.4th 970, where we held that in-custody treatment at the jail *before the defendant is convicted of the commitment offense* counts as "inpatient" treatment. (*Id.,* at pp. 974–975 [treatment commenced on date of arrest].) Treatment before a defendant is convicted of the commitment offense cannot satisfy the 90-day treatment criterion because the defendant is not a "prisoner" when the treatment is provided. That a defendant receives presentence custody credits does not mean that in-custody treatment *before imposition of the prison sentence* satisfies the 90-day treatment criterion if the defendant is later certified as an MDO.

*DMH-specified Outpatient Treatment*

In *Del Valle, supra,* 100 Cal.App.4th 88, we explained that MDO treatment must be planned, approved and implemented through the DMH and that such treatment is ordinarily provided on an inpatient basis, i.e., in prison or in a custodial setting. (*Id.,* at p. 93.) Section 2964, subdivision (a) however, provides that a prisoner may receive treatment in an outpatient program and states in pertinent part: "The treatment required by Section 2962 shall be inpatient unless the State Department of State Hospitals certifies to the Board of Parole Hearings that there is reasonable cause to believe the parolee can be safely and effectively treated on an outpatient basis, in which case the Board of Parole Hearings shall permit the State Department of State Hospitals to place the parolee *in an outpatient treatment program specified by the State Department of State Hospitals.*" (Italics added.)

▮ Inpatient treatment and outpatient treatment are synonymous under the MDO act where the parole outpatient treatment is specified by the DMH. (See, e.g., *People v. Superior Court (Salter)* (2011) 192 Cal.App.4th 1352, 1356 [121 Cal.Rptr.3d 873]; *People v. Superior Court (Myers)* (1996) 50 Cal.App.4th 826, 831 [58 Cal.Rptr.2d 32].) That is what occurred here. Appellant could not be paroled for outpatient treatment unless DMH certified "there is reasonable cause to believe the parolee can be safely and effectively treated on an outpatient basis, in which case the board shall permit the State Department of Mental Health to place the parolee in an outpatient program *specified by the State Department of Mental Health.*" (Cal. Code Regs., tit. 15, § 2577, subd. (a), italics added.) DMH not only specified the outpatient treatment but was required to consult with the POC as to the appropriate treatment plan. (§ 2964, subd. (a).) ▮ Absent evidence to the contrary, it is presumed that official duty has been regularly performed. (Evid. Code, § 664; *People v. Martinez* (2000) 22 Cal.4th 106, 125 [91 Cal.Rptr.2d 687, 990 P.2d 563].)

*MDO Certification Hearing*

Before the BPH hearing, a Department of Corrections and Rehabilitation (CDCR) psychiatrist certified that appellant met all the MDO criteria and referred to two MDO evaluations as required by section 2962, subdivision (d)(1) and California Code of Regulations, title 15, section 2572, subdivision (a). (See *Lopez v. Superior Court* (2010) 50 Cal.4th 1055, 1064 [116 Cal.Rptr.3d 530, 239 P.3d 1228]; Cal. Code Regs., tit. 15, § 2570 [describing MDO certification and hearing procedures].) Former section 2962, subdivision (d)(1) stated in pertinent part: "Prior to release on parole, the person in charge of treating the prisoner and a practicing psychiatrist or psychologist from the State Department of Mental Health have evaluated the

prisoner at a facility of the Department of Corrections and Rehabilitation, and a chief psychiatrist of the Department of Corrections and Rehabilitation has certified to the Board of Parole Hearings that the prisoner has a severe mental disorder, that the disorder is not in remission, or cannot be kept in remission without treatment, that the severe mental disorder was one of the causes or was an aggravating factor in the prisoner's criminal behavior, *that the prisoner has been in treatment for the severe mental disorder for 90 days or more within the year prior to his or her parole release day*, and that by reason of his or her severe mental disorder the prisoner represents a substantial danger of physical harm to others." (Italics added.)

The first evaluation, signed by CDCR Senior Psychologist Alison Stanley, attests that the POC treatment (90 days) and EOP treatment (73 days) satisfies the 90-day requirement. The second evaluation, signed by DMH Consulting Psychologist Michele Reed, makes no mention of the POC treatment and states that appellant's EOP treatment was less than 90 days. This is consistent with Dr. Debruin's testimony that DMH evaluators, as a matter of policy, do not count POC in determining whether the 90-day-treatment criterion is satisfied. But former section 2964, subdivision (a) stated in pertinent part: "Prior to placing a parolee in a local outpatient program, the State Department of Mental Health shall consult with the local outpatient program as to the appropriate treatment plan."

At trial, counsel stipulated that the BPH hearing was held July 15, 2011, and that "Mr. Achrem was certified as required by law." The stipulation refers to the CDCR certification to the BPH and two MDO evaluations lodged with the superior court, of which we take judicial notice. The CDCR certification and Dr. Stanley's evaluation show that appellant met all the MDO criteria including 90 days of treatment. (See *People v. Bowers* (2006) 145 Cal.App.4th 870, 879 [52 Cal.Rptr.3d 74] [single psychiatric opinion constitutes substantial evidence].)

### Conclusion

Sections 2962 and 2964, when read together, provide that the 90-day treatment requirement can be satisfied by inpatient treatment (i.e., treatment in prison or a custodial setting after the defendant is sentenced to state prison on the commitment offense), or by POC treatment providing DMH screened the prisoner and certified to the BPH that the prisoner can be safely and effectively treated at the POC. Although mental health professionals may disagree on whether POC treatment counts in satisfying the 90-day treatment criteria, we take the MDO act as we find it. (See, e.g., *Unzueta v. Ocean View School Dist.* (1992) 6 Cal.App.4th 1689, 1699 [8 Cal.Rptr.2d 614] [rejecting

" 'dictionary school of jurisprudence' "].)     ▉     "[W]e do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]" (*People v. Pieters* (1991) 52 Cal.3d 894, 899 [276 Cal.Rptr. 918, 802 P.2d 420].)

The judgment (MDO commitment order) is affirmed.

Gilbert, P. J., and Perren, J., concurred.